Erica C. Mirabella
MIRABELLA LAW, LLC
132 Boylston Street, 5th Floor
Boston, MA  02116
(617) 580-8270
(617) 583-1905 (fax)
erica@mirabellaLLC.com

*Counsel for Plaintiffs*
[Additional Counsel listed on signature page]

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIE PIRO and MICHAEL HALL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>EXERGEN CORPORATION,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Upon personal knowledge as to their own acts and status, and based upon their counsel's investigation, and information and belief as to all other matters, Plaintiffs Julie Piro and Michael Hall ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

## SUMMARY OF THE ACTION

1. This is a class action brought on behalf of Massachusetts and California consumers who purchased Exergen Temporal Thermometer ("the Thermometer"). The packaging and label of the Thermometer, as well as the body of the Thermometer itself, claim that the product is "MADE IN U.S.A." In fact, more than a *de minimus* amount of the component parts are made in foreign jurisdictions. Plaintiffs allege that Defendant Exergen Corporation's representation that the Thermometer is "MADE IS U.S.A." is misleading, false, deceptive, and unfair, in violation of the laws of California and Massachusetts.

2. Exergen's deceptive labeling is and was material to the purchasing decisions of consumers, including Plaintiffs. In reliance on Defendant's representations and marketing, Plaintiffs and the Class purchased and paid a premium price for the Thermometer. Plaintiffs would not have purchased the Thermometer had they known it was not entirely "MADE IN U.S.A.," or that it was misbranded in violation of state and federal law.

3. Plaintiffs and the Class were damaged as a result and seek damages, restitution, and injunctive relief for Defendant's false and misleading representations.

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff Julie Piro is a resident of Tewksbury, Massachusetts. Plaintiff Piro purchased the Thermometer in or about July-September 2013, at a Baby's R US in Peabody, Massachusetts.

5. Plaintiff Michael Hall is a resident of San Diego, California. Plaintiff Hall purchased the Thermometer at a Costco in Vista, California in or about November 2014.

6. Defendant Exergen Corporation is a Massachusetts corporation with its principal place of business in Watertown, Massachusetts. Exergen sells its products in retail stores in Massachusetts and throughout the United States,, and advertises its products in Massachusetts and

throughout the United States.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000 exclusive of interest and costs, there are more than one hundred Class members, and minimal diversity exists because Plaintiffs and numerous members of the Class are citizens of different states than Defendant.

8. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with Massachusetts and Defendant otherwise purposely avails itself of the markets in Massachusetts through the promotion, marketing, and sale of its products and services in Massachusetts to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper under 28 U.S.C. § 1391(a) because (1) Defendant is subject to personal jurisdiction in the District of Massachusetts, and (2) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendant engaged in the extensive promotion, marketing, distribution, and sales of the products at issue in this District, and Plaintiff Piro is a resident of this District and purchased the products at issue in this District.

## FACTS

10. The Federal Trade Commission Act ("FTCA") provides in relevant part that: "To the extent any person introduces, delivers for introduction, sells, advertises, or offers for sale in commerce a product with a 'Made in the U.S.A.' or 'Made in America' label, or the equivalent thereof, in order to represent that such product was in whole or substantial part of domestic origin, such label shall be consistent with decisions and orders of the Federal Trade Commission issued pursuant to section 45 of this title." 15 U.S.C. § 45a.

11. According to the Federal Trade Commission ("FTC"), an unqualified statements of U.S. origin is deceptive unless "all or virtually all" of the components are domestic; that is, the product must contain no more than a *de minimis* amount of foreign content.  62 FR 63756–01 at

pp. 63757, 63764–65.

12. California law also prohibits the misrepresentation of a product's origin. Specifically, Business & Professions Code § 17533.7 provides that "[t]t is unlawful for any person, firm, corporation or association to sell or offer for sale in this State any merchandise on which merchandise or on its container there appears the words 'Made in U.S.A.,' 'Made in America,' 'U.S.A.,' or similar words when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States."

13. California law also specifically prohibits "[u]sing deceptive representations or designations of geographic origin in connection with goods or services." California Civil Code § 1770(a)(4).

14. During the relevant four year statutory time period, Defendant manufactured, marketed, and distributed for sale the Thermometer. The packaging and label of the Thermometer, as well as the Thermometer itself, asserted that the product was "MADE IN USA."

15. Contrary to the "MADE IN USA" claims, however, the Thermometer was and is made, manufactured, or produced with component parts that are manufactured outside of the United States. The foreign-made component parts in the Thermometer purchased by Plaintiffs include, on information and belief, the LED lights, the LED display, the Microchip processor, and/or the 9-volt battery. Discovery may reveal additional foreign-made component parts.

16. Defendant marketed and represented to the general public that its Thermometer was "MADE IN U.S.A." In addition, Defendant concealed the true country of origin of its "MADE IN U.S.A." labeled Thermometer to the general public.

17. Consumers are particularly vulnerable to these deceptive and fraudulent practices. Most consumers possess very limited knowledge of the likelihood that products, including the component parts therein, claimed to be made in the United States are in fact made in foreign countries. This is a material factor in many individuals' purchasing decisions, as they believe they are supporting American companies and American jobs. Consumers also generally believe

that "Made in USA" products are of higher quality than their foreign-manufactured counterparts.

18. Due to Defendant's deceptive marketing of its Thermometer, Plaintiffs, as well as members of the general public, were fraudulently induced to purchase Defendant's products.

19. Plaintiffs, as well as members of the general public, would not have purchased the Thermometer had they known it was not "MADE IN U.S.A.," or that it was misbranded in violation of state and federal law.

20. Defendant charges a premium for its Thermometer, in part because it is supposedly "MADE IN U.S.A." Had Plaintiffs known the Thermometer was not in fact "MADE IN U.S.A.," they would not have paid a premium for it.

21. California, Massachusetts, and federal laws are designed to protect consumers from this type of false representation and predatory conduct. Defendant's scheme to defraud consumers is ongoing and will victimize consumers each and every day until altered by judicial intervention.

22. Under California law, on December 8, 2014, a written demand for relief, identifying Plaintiff Michael Hall and the California Class, reasonably describing the unlawful acts committed and the injury suffered by Plaintiffs and the California Class, was mailed to Defendant.

23. Under Massachusetts ALM GL ch. 93A, on May 12, 2015, a written demand for relief, identifying Plaintiff Julie Piro and the Massachusetts Class and reasonably describing the unfair or deceptive acts or practices relied upon and the injury suffered by Plaintiffs and the Massachusetts Class, was mailed to Defendant.

## CLASS ACTION ALLEGATIONS

24. Plaintiffs brings this action on behalf of themselves and the following "Classes":

   **(1) All purchasers in Massachusetts who bought the Exergen Temporal Thermometer beginning May 12, 2011 throughout the date of notice ("the Massachusetts Class");**

   **(2) All purchasers in California who bought the Exergen Temporal Thermometer beginning May 12, 2011 throughout the date of notice ("the California Class").**

25. Excluded from the Classes are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, coconspirators, successors, subsidiaries, and assigns. Also excluded from the Classes are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

26. This action is brought and may properly be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

27. Numerosity: Based upon Defendant's sales data with respect to the Thermometer, including the sales records of its retail partners (e.g. Costco, Babies "R' Us, etc.), it is estimated that the members of the Classes number in the thousands, and that joinder of all Class members is impracticable.

28. Common Questions Predominate: This action involves common questions of law and fact applicable to each member of the respective Classes that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right of each Class member to recover. Questions of law and fact common to each Class member include, but not limited to:

    a. Whether Defendant violated Section 17533.7 of the California Business & Professions Code by misrepresenting the national origin of its Thermometer because component parts within these products are manufactured outside the United States, and whether Defendant's actions in this regard constitute an unfair, unlawful, or fraudulent business practice pursuant to Section 17200 *et seq.* of the California Business & Professions Code;

    b. Whether Defendant violated 940 C.M.R. § 3.02(2) and the FTCA by misrepresenting the national origin of its Thermometer because component parts within these products are manufactured outside the United States, and whether Defendant's actions in this regard constitute a violation of Chapter 93A.

    c. Whether component parts of the Thermometer were and are made in

foreign jurisdictions;

    d.  Whether Defendant has been unjustly enriched;

    e.  Whether Plaintiffs and the Class have been damaged by the wrongs complained herein, and if so, whether Plaintiffs and the Class are entitled to injunctive and/or other equitable relief, including restitution.

  29.  Typicality: Plaintiffs' claims are typical of the claims of the Classes because they bought Defendant's Thermometer during the Class Period. Defendant's unlawful, unfair, and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Classes sustained similar injuries arising out of Defendant's conduct in violation of California and Massachusetts law. The injuries of each member of the Classes were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Classes. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

  30.  Adequacy: Plaintiffs will fairly and adequately protect the interests of the Classes. Neither Plaintiffs nor their counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Classes. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Classes.

  31.  Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Classes will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to

which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as the damages suffered by individual members of the Classes may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Classes to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

32. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

33. Plaintiffs and their counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude their maintenance as a class action.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of California Business & Professions Code § 17200 *et seq.*

### (on behalf of the California Class)

34. Plaintiffs incorporate each allegation above as if fully set forth herein.

35. Business & Professions Code § 17200 *et seq.* provides that unfair competition means and includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading marketing."

36. By and through their conduct, including the conduct detailed above, Defendant engaged in activities which constitute unlawful, unfair, and fraudulent business practices

prohibited by Business & Professions Code § 17200 *et seq*. Beginning at an exact date unknown as yet and continuing up through the present Defendant committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Business & Professions Code § 17200 *et seq*., by manufacturing, distributing, marketing, and/or selling products with a false country of origin designation and violating Business & Professions Code § 17533.7 by falsely claiming that the Thermometer is "MADE IN USA" when it is in fact made with component parts manufactured outside of the United States.

37. Beginning at an exact date unknown as yet and continuing up through the present, Defendant committed acts of unfair competition that are prohibited by Business & Professions Code § 17200 *et seq*. Defendant engaged in a pattern of "unfair" business practices that violate the wording and intent of the statutes, by engaging in practices that threaten an incipient violation of law, or violate the policy or spirit of laws because its effects are comparable to or the same as a violation of the law by manufacturing, distributing, and marketing the Thermometer with a false country of origin designation and violating Business & Professions Code § 17533.7 by falsely claiming that the product referenced herein is "MADE IN USA" when it is in fact made with component parts manufactured outside of the United States.

38. Alternatively, Defendant engaged in a pattern of "unfair" business practices that violate the wording and intent of the statutes, by engaging in practices that are immoral, unethical, oppressive or unscrupulous, the utility (if any) of which conduct is far outweighed by the harm done to consumers and public policy by manufacturing, distributing, marketing, and advertising the Thermometer with the false claim that the product referenced herein is "MADE IN USA."

39. Alternatively, Defendant engaged in a pattern of "unfair" business practices that violate the wording and intent of the statutes, by engaging in practices wherein: (1) the injury to the consumer was substantial; (2) the injury was not outweighed by any countervailing benefits to consumers or competition; and (3) the injury was of the kind that the consumers themselves could not reasonably have avoided by manufacturing, distributing, marketing, and advertising the

Thermometer with the false claim that the product referenced herein is "MADE IN USA."

40. Beginning at an exact date unknown as yet and continuing up through the present, Defendant committed acts of unfair competition, including those described above, prohibited by Business & Professions Code § 17200 *et seq.* by engaging in a pattern of "fraudulent" business practices within the meaning of Business & Professions Code § 17200 *et seq.*, by manufacturing, distributing, marketing, and/or selling products with a false country of origin designation and violating Business & Professions Code § 17533.7 by falsely claiming that the Thermometer referenced herein is "MADE IN USA."

41. Defendant engaged in these unlawful, unfair and fraudulent business practices for the primary purpose of collecting unlawful and unauthorized monies from Plaintiff Hall and all others similarly situated, thereby unjustly enriching Defendant.

42. As a result of the repeated violations described herein, Defendant received unearned commercial benefits at the expense of their competitors and the public.

43. Defendant's unlawful, unfair and fraudulent business practices present a continuing threat to the public in that Defendant continues to engage in unlawful conduct.

44. Such acts and omissions are unlawful and/or unfair and/or fraudulent and constitute a violation of Business & Professions Code § 17200 *et seq*.  Plaintiff Hall reserves the right to identify additional violations by Defendant as may be established through discovery.

45. As a direct and legal result of their unlawful, unfair and fraudulent conduct described herein, Defendant has been and will be unjustly enriched by the receipt of ill-gotten gains from customers, including Plaintiff Hall, who unwittingly provided their money to Defendant based on Defendant's fraudulent country of origin designation.

46. As a direct and proximate cause of Defendant's violation of Business & Professions Code § 17200 *et seq*., Plaintiff Hall and members of the California Class have been injured.

47. In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff Hall seeks the recovery of attorneys' fees pursuant to Code of Civil

Procedure § 1021.5, which is available to a prevailing plaintiff who wins relief for the general public.

## COUNT II

### Violation of Business & Professions Code § 17533.7

**(On behalf of California Class)**

48.     Plaintiff incorporates each allegation above as if fully set forth herein.

49.     Defendant violated Business & Professions Code § 17533.7 by manufacturing, selling and/or offering to sell merchandise in the State of California with the "MADE IN U.S.A." label as fully set forth herein. On information and belief, Defendant's Thermometer contains component parts that are manufactured outside of the United States.

50.     It is alleged on information and belief that Defendant's violations of Business & Professions Code § 17533.7 was done with awareness of the fact that the conduct alleged was wrongful and were motivated solely for increased profit.  It is also alleged on information and belief that Defendant did these acts knowing the harm that would result to Plaintiffs and that Defendant did these acts notwithstanding that knowledge.

51.     As a direct and proximate result of Defendant's violations of Business & Professions Code § 17533.7, Plaintiff Hall and Class members are entitled to restitution of excess monies paid to Defendant by Plaintiffs and Class members relating to the false "MADE IN U.S.A." claims on Defendant's Thermometer.

52.     As a direct and proximate cause of Defendant's violation of Business & Professions Code § § 17533.7, Plaintiff Hall and members of the California Class have been injured.

53.     In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff Hall seeks to recover attorneys' fees pursuant to Code of Civil Procedure § 1021.5, which is available to a prevailing plaintiff who wins relief for the general public.

## COUNT III
### Breach of Express Warranty

**(on behalf of the California and Massachusetts Class)**

54. Plaintiffs incorporates each allegation above as if fully set forth herein.

55. Plaintiffs and the Classes reasonably relied on Defendant's misrepresentations.

56. Defendant expressly warrants on the packaging of its Thermometer that it is "MADE IN U.S.A."

57. In fact, the Thermometer purchased by Plaintiffs contained component parts made in foreign jurisdictions.

58. Plaintiffs and the members of the Classes relied on Defendant's express warranty.

59. Defendant breached its express warranty.

60. As a result of the foregoing, Plaintiffs and the other members of the Classes have suffered damages in that the value of the products they purchased was less than warranted by Defendant.

61. Plaintiffs and the Classes were injured as a result of Defendant's breach of its express warranty

62. By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Blue Diamond products, together with punitive damages.

## COUNT IV

### Breach of Implied Warranty of Merchantability

### (on behalf of the California and Massachusetts Class)

63. Plaintiffs incorporates each allegation above as if fully set forth herein.

64. To be merchantable under California law, a good must, among other things, "[c]onform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a)(4). Likewise, to be merchantable under Massachusetts law, a good must, among other things, "conform to the promises or affirmations of fact made on the container or label, if any." ALM GL ch. 106, § 2-314(f).

65. The container and label of the Thermometer promise and affirm that the

Thermometer is "MADE IS U.S.A.," when in fact its component parts are made in foreign jurisdictions. Therefore, the Thermometer is not merchantable under either California or Massachusetts law.

66. Plaintiffs and the members of the Classes would not have purchased the misbranded Thermometer if Plaintiffs knew the products breached the implied warranty of merchantability by failing to conform to the promises and affirmations of fact made on the container or label of this product.

67. By reason of the foregoing, Plaintiffs and the Class members were damaged in the amount they paid for the misbranded Thermometer, together with punitive damages.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, and on behalf of the general public, pray for judgment against Defendant as follows:

A. For an order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Classes;

B. For an order awarding, as appropriate, damages to Plaintiffs and the Classes, including all monetary relief to which Plaintiffs and the Class are entitled pursuant to under Massachusetts and California law.

C. For an order awarding restitutionary disgorgement to Plaintiffs and the Classes;

D. For an order awarding non-restitutionary disgorgement to Plaintiffs and the Classes;

E. For an order requiring Defendant to immediately cease and desist from selling its Thermometer in violation of law; enjoining Defendant from continuing to manufacture, label, market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

F.      For an order awarding attorneys' fees and costs;

G.      For an order awarding punitive damages;

H.      For an order awarding nominal damages;

I.      For an order awarding pre-and post-judgment interest; and

J.      For an order providing such further relief as this Court deems proper.

Dated: Boston, Massachusetts
May 12, 2015

MIRABELLA LAW, LLC

By:    */s/Erica Mirabella*

Erica C. Mirabella
MIRABELLA LAW, LLC
132 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: (617) 580-8270
Facsimile: (617) 583-1905
erica@mirabellaLLC.com

Jonathan W. Cuneo
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 589-1813
jonc@cuneolaw.com

Taylor Asen
CUNEO GILBERT & LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone: (202) 789-3960
Facsimile: (202) 589-1813
tasen@cuneolaw.com

John Donboli
DEL MAR LAW GROUP, LLP
12250 El Camino Real, Suite 120
San Diego, CA 92130
Telephone: (858) 793-6244
Facsimile: (858) 793-6005
jdonboli@delmarlawgroup.com

*Counsel for Plaintiffs*