UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIE PIRO and MICHAEL HALL, individually and on behalf of all others similarly situated, <br><br>      Plaintiffs, <br><br> vs. <br><br> EXERGEN CORPORATION, <br><br>      Defendant. | Civil Action No.: 1:15-cv-11834  DJC |

**PLAINTIFFS' <u>OPPOSITION</u> TO DEFENDANT EXERGEN CORPORATION'S MOTION TO DISMISS ALL CLAIMS FOR LACK OF STANDING AND MOTION TO DISMISS THE BREACH OF WARRANTY CLAIMS FOR FAILURE TO STATE A CLAIM**

John H. Donboli
DEL MAR LAW GROUP, LLP
12250 El Camino Real, Suite 120
San Diego, CA 92130
Telephone: (858) 793-6244
Facsimile: (858) 793-6005
jdonboli@delmarlawgroup.com

Erica C. Mirabella
MIRABELLA LAW, LLC
132 Boylston Street, 5th Floor
Boston, MA  02116
(617) 580-8270
(617) 583-1905 (fax)
erica@mirabellaLLC.com

Attorneys for Plaintiffs

**TABLE OF CONTENTS**

I.      INTRODUCTION……………..…………………………..………..……………..…2

II.     FACTS…………………………………………………………………………………2

III.    ARGUMENT……………………………………………………………………......5

        A.      DEFENDANT'S CORRECTIVE ACTION DOES NOT COMPLETELY RESOLVE
                ALL ISSUES IN THIS CASE………..………………………………………………5

                1.      PLAINTIFFS ARE ALSO ENTITLED TO AN INJUNCTION FROM THIS
                        COURT.… ………………………………………………..................…..6

                2.      PLAINTIFFS ARE ALSO ENTITLED TO RECOVER THEIR FEES AND COSTS
                        AND POTENTIALLY PUNITIVE DAMAGES……………….………………..……6

        B.      EXERGEN'S ACTIONS WERE INSUFFICIENT TO FULLY CORRECT THE OFFENDING
                BEHAVIOR…………………………………………..………………………………..8

                1.      EXERGEN'S ATTEMPT TO CHANGE THEIR OFFENDING LABEL IS NOT
                        COMPLETE………………………………………………………….……9

                2.      EXERGEN'S ATTEMPT TO IDENTIFY ITS CUSTOMERS MAY BE
                        LACKING…………………………………………………………........9

                3.      EXERGEN'S NOTICE IS INADEQUATE……………………………….……..10

                4.      EXERGEN'S "CLAIMS PROCESS" IS DEFICIENT……………….………………11

        C.      EXERGEN'S RELIANCE ON THE CASES CITED IN ITS MOTION IS MISPLACED……………..11

        D.      PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF EXPRESS
                WARRANTY………………………………………………………….......13

        E.      PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF IMPLIED
                WARRANTY…………………………………………….……………...14

IV.     CONCLUSION……………………………………………………….…..…14

# **TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Allen v. Similasan Corp.*

      No. 12cv0376–BTM–WMC, 2013 WL 2120825, at *6 (S.D. Cal. May 2014)…..............………14

*Chang v. Wozo LLC*

      No. 11-10245-DJC, 2012 U.S. Dist. LEXIS 42896 (D. Mass. Mar. 28, 2012)……………….…12

*Consumers Union of U.S., Inc. v Alta-Dena Certified Dairy*

      (1992) 4 Cal.App.4th 963, 973……………………………………………………….….……7

*Envtl. Prot. Info. Ctr. v. Dep't of Foresty and Fire Prot.*

      190 Cal. App. 4th 217, 237 (2010)…………………………………………………………..8

*Epstein v. Chase Bank, USA.*

      Case No. 13 Civ. 4744 (KPF), 2014 U.S. Dist LEXIS 38628………………..……..……...12

*Fieldstone Co. v. Briggs Plumbing Products, Inc.*

      54 Cal.App.4th 357, 369–70, 62 Cal.Rptr.2d 701 (1997)……………………………..…...13

*Frascogna v. Security Check, LLC*

      No. 3:07cv686 DPJ-JCS, 2009 U.S. Dist. LEXI 4044………………………………...……11, 12

*Graham v Daimlerchrysler Corp.*

      (2005) 34 Cal.4th 553…………………………………………………………..………7

*In re Ferrero Litig.*

      794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011)…………………………………..…..………14

*In re Mattel, Inc.*

      (2008) 588 F.Supp.2d 1111……………………………………………………………….6

*Kagan v. Gibraltar Sav. & Loan Ass'n*

      35 Cal. 3d 582 (1984)……………………………………………………………….…...12

*Sanders v. Apple Inc.*

      672 F. Supp. 2d 978, 989 (N.D. Cal. 2009)……………………………………….…..…13

*Suter v. City of Lafayette*…………………………………………………………………………7, 8, 13

     (1997) 57 Cal. App. 4th 1109, 1137

**<u>Statutes</u>**

California Business and Professions Code §17200……………………………………...…………5

California Business and Professions Code §17533.7……………………………………….…5, 6

California Civil Code § 1791.1(a)………………………………………………………….…….5

California Code of Civil Procedure § 1021.5……………………………...……………….…14

California Commercial Code § 2314(2)(f)………………………………………………….…...14

California Consumers Legal Remedies Act ("CLRA")………………………………….…...…3

Massachusetts General Laws Ch. 106, § 2-314(2)…………………………………………...…14

United States Code of Federal Regulations 16 §1115.20(a)……………………………….…..…6

**<u>Rules</u>**

Federal Rule of Civil Procedure 12(b)(1)…………………………………………………...……14

Federal Rule of Civil Procedure 12(b)(6)…………………………………………………...……14

## I.      **INTRODUCTION**

Defendant Exergen Corporation ("Exergen") files this instant motion to dismiss Plaintiffs'

claims based on an alleged lack of standing and failure to state a claim.[1]  Exergen mistakenly

believes that because it took some initial steps, albeit incomplete and inadequate, to address some

of Plaintiffs' claims early on in this litigation process, that it is now absolved of all liability in this

case.  Exergen is dead wrong.  While Plaintiffs applaud Exergen's efforts, the law provides

Plaintiffs much more protection and additional remedies than Exergen's actions have afforded.

Plaintiffs, and the putative class, are entitled to restitution, an injunction, damages, including

punitive damages, and to recover their attorneys' fees and costs.  Exergen's actions have not

completely resolved the issues in Plaintiffs suit and therefore, Plaintiffs' claims remain.  Plaintiffs

still have standing and have stated their claims with sufficiency.  Accordingly, Exergen's motion

to dismiss must be denied.

## II.     **FACTS**

Exergen manufactures and sells a temporal scanner that allows one to measure bodily

temperatures by placing the scanner on the forehead.  Plaintiff Michael Hall purchased the

scanner on November 25, 2014, in San Diego, California.  Plaintiff Julie Piro purchased the

scanner between July and September 2013 in Peabody, Massachusetts.  In both instances, the

scanner was prominently labeled "Made in USA", but contained multiple foreign-made

component parts in violation of California and Massachusetts law.  The "Made in USA"

representation was a material factor in Plaintiffs Hall's and Piro's decision to purchase the

---

[1]      As an initial matter, Exergen elected to devote seven pages of its Introduction and Facts Sections of its motion to making erroneous and incredibly inflammatory statements regarding counsel for Plaintiff Hall (John H. Donboli).  The statements made are hostile and are wholly irrelevant to the issues in the motion and in the case.  Further, the statements claimed by Mr. Raygor to be made by Mr. Donboli are false.  It is ironic that Mr. Raygor placed these alleged statements in the "Fact" Section, as they are anything but that.  Because these inflammatory and distorted statements are not germane to the instant motion, they will not be addressed in this opposition.  However, Mr. Donboli has generally addressed the false statement in his Declaration, which is filed herewith.

temporal scanners.

On December 8, 2014, counsel for Plaintiff Hall, sent correspondence to Exergen, advising of its representation of Plaintiff Hall in this matter, and providing the requisite 30-day notice of violation pursuant to California law.  Similarly, on May 12, 2105, counsel for Plaintiff Piro sent Exergen correspondence advising of Piro's representation and notice of the violations of the mislabeling under Massachusetts law.  In both instances, the correspondence from Plaintiffs requested that:  (1) Exergen cease the mislabeling of its temporal scanner and ensure the practice is discontinued (either by agreement or injunction), (2) Exergen notify, after reasonable attempts to identify, other consumers of the temporal scanner of the wrong-doing, (3) and offer an appropriate correction, upon the consumer's request, and (4) reasonable payment of Plaintiffs' attorneys' fees and costs.  (Dkt. No. 9-3.)

In response to the letter sent by counsel for Plaintiff Hall, on January 7, 2015, counsel for Exergen sent correspondence to counsel for Plaintiff Hall informing him that Exergen, without admitting any wrongdoing, intended to correct, repair, replace, or otherwise rectify the scanner within a reasonable time.  Exergen also agreed to make a reasonable effort to identify customers who purchased the temporal scanner, and notify them, that upon their request, "Exergen shall make the appropriate correction, repair, replacement, or other remedy" of the scanner.  Further, counsel explained that Exergen was in the process of ceasing using the false "Made in USA" label and would engage in reasonable efforts to replace the label with one that complies with California law.  (Dkt. No. 9-4.)

During this time, many communications ensued between counsel for Plaintiff Hall and Exergen generally regarding the relevant law, a nationwide versus individual state settlement, and scheduling mediation.  In fact, during this time, counsel for Exergen asked counsel for Plaintiff Hall to conduct legal research in support of mediation pertaining to national *res judicata* to the

extent a national class wide settlement was reached at mediation.  The research was conducted by

counsel for Plaintiff Hall and a summary email of same was sent to counsel for Exergen on April

13, 2015.  (Donboli Decl., ¶ 9.)

        During these months, counsel for Plaintiff Hall believed the parties were working together

toward a resolution only to realize now that it was all a delay tactic to give Exergen time to

implement its "refund program"[2].  (Donboli Decl., ¶¶ 10-11.)  If anything, Exergen's conduct in

this case has a chilling effect on all future pre-litigation attempts to resolve disputes in class

action cases.  Regardless, it did not work as Exergen had planned.  The "program" is insufficient

as a remedy to the consumers who purchased the temporal scanner and it does not rise to the level

of extinguishing Plaintiffs' claims.

        On April 15, 2015, counsel for Exergen confirmed that Exergen had ceased using the

misleading label, and replaced it with a new label purporting to be compliant with California law.

Counsel stated that Exergen will not in the future use the old, misleading label.  Counsel for

Exergen also stated that Exergen had identified many customers and notified them of their

opportunity to receive a refund for the scanner they purchased with the misleading label.  Exergen

also stated, incorrectly, that there was "nothing remaining to be done" with respect to an

injunction, restitution, or Plaintiff's attorneys' fees.  (Dkt. No. 9-5.)

        On May 1, 2015, counsel for Plaintiff Hall sent correspondence to counsel for Exergen

confirming that Exergen refused to enter into a stipulated injunction and refused to pay any

attorneys' fees and costs incurred by Plaintiff Hall to that point.  Counsel for Plaintiff Hall also

confirmed that Exergen rejected Plaintiff Hall's request to attend mediation.  (Dkt. No. 9-7.)

        On May 12, 2015, Plaintiffs Piro and Hall filed a class action complaint against Exergen

---

[2] This "program", on which Exergen's motion to dismiss is primarily based, is insufficient in
addressing the issues related to Plaintiffs' claims.  This is discussed in further detail at Section
III(1)(c-d),

asserting claims for Violation of California Business and Professions Code Section 17200 *et seq.*, Violation of California Business and Professions Code Section 17533.7, Breach of Express Warranty, and Breach of Implied Warranty of Merchantability.  Among other things, Plaintiffs, on behalf of themselves and the putative class, importantly prayed for damages, restitutionary disgorgement, an order requiring Exergen to cease and desist from selling it temporal scanners in violation of the law, an injunction, an order to Exergen to engage in corrective action, and attorneys' fees and costs.  (Dkt. No. 9-8.)

On June 4, 2015, counsel for Exergen sent correspondence to counsel for Plaintiff Piro, reiterating the same statements from his April 15, 2015 letter to counsel for Plaintiff Hall, and extended Plaintiff Piro the same opportunity to return her scanner for a refund.  Then, again, and again incorrectly, counsel for Exergen claimed there was nothing left to enjoin, because of the initial remedial measures Exergen had taken in response to the December 8, 2014 demand letter from counsel for Hall.  Counsel for Exergen requested that Plaintiffs withdraw their complaint. Plaintiffs were unable to do so, as many issues still remain that Exergen has not addressed.  (Dkt. No. 9-9.)  Accordingly, on June 6, 2015, Exergen filed this instant motion to dismiss.  (Dkt. Nos. 8-9.)

III.   **ARGUMENT**

A.   **DEFENDANT'S ATTEMPTS TO "FIX" THEIR CONDUCT DOES NOT COMPLETELY RESOLVE ALL ISSUES IN THIS CASE.**

In its motion, Exergen primarily relies on the fact that its attempts to fix its conduct completely resolved all of the claims at issue in this case and, therefore, as the argument goes, Plaintiffs no longer have standing.  Exergen is mistaken.  While Exergen's actions can be applauded as a good first step, its actions are incomplete and insufficient to address all of Plaintiffs' claims.  Plaintiffs allege causes of action for violations of California Business and Professions Code Section 17200, *et seq.*, violations of 17533.7, and breaches of express warranty

and implied warranty of merchantability.  Pursuant to Cal. Bus. & Prof. Code Sections 17200, *et seq.* and 17533.7, Plaintiffs, and the putative class, are entitled to restitution, injunctive relief, possible punitive damages, and the recovery of reasonable attorneys' fees.  Simply because Exergen decides, at this point, in response to a demand letter from Plaintiffs, to change its labeling and offer to pay a refund to Plaintiffs for the offending product, does not absolve Exergen from its full liability that Plaintiffs are afforded under the law.

The *In re Mattel, Inc.* (2008) 588 F.Supp.2d 1111 case is particularly relevant here.  In *Mattel*, the company agreed (on its own) to a voluntary product replacement as a form of corrective action and argued that all of Plaintiff's state law claims were preempted as a result.  *Id.* at 1115.  The fact pattern in *Mattel* was even stronger for the defendant, than in the current case, because the corrective action in *Mattel* was pursuant to federal regulations (16 C.F.R. Section 1115.20(a)).  The Court held, however, that a "voluntary corrective action plan [has] 'no legally binding effect,'"  The Court rejected the preemption argument (in this case, Exergen couches its argument as a lack of standing argument) because "Defendants' preemption argument would essentially allow them to choose their own remedy to a CPSA violation with no guarantee for input from harmed parties, *see* 16 C.F.R. § 1115.20(a)(4), and little incentive on the part of the CPSC to ensure that the proposed remedy was completely adequate.  Under the explicit terms of the relevant regulations, the CPSC has the right to seek additional remedies beyond those voluntarily provided if it believes that the voluntary plan did not provide an adequate remedy for the problem.  Given this, the Court can see little justification in denying additional remedies to the purchasers of the product at issue if they can prove that the voluntary remedy offered by the defendant was inadequate."  *Id.* at 1116.  In this case, there are no guarantees the company will actually do what it claims it will do and Court supervision is required.  Plaintiffs are entitled to oversight and protection from the Court in this regard.

5

### 1. PLAINTIFFS ARE ALSO ENTITLED TO AN INJUNCTION FROM THIS COURT.

Although Exergen took some steps to change its label to a more compliant label under the law, its actions do not foreclose Plaintiffs right to seek an injunction.  Pursuant to California law, a company that violates the law shouldn't be free to "sin no more" and operate without court supervision. *See Consumers Union of U.S., Inc. v Alta-Dena Certified Dairy* (1992) 4 Cal.App.4th 963, 973 [determining that an injunction to prevent future harms was proper because "an order which commands a party only to go sin no more simply allows every violator a free bite at the apple."].  Plaintiffs are not required to "take Exergen's word" that it will do, and continue to do, what it claims it will.  Plaintiffs are entitled to the guarantee and protection that an injunction affords.

### 2. PLAINTIFFS ARE ALSO ENTITLED TO RECOVER THEIR FEES AND COSTS AND POTENTIALLY PUNITIVE DAMAGES.

Despite Exergen's position to the contrary, Plaintiffs are entitled to recover their attorneys' fees.  Plaintiffs' fees are recoverable pursuant to the Private Attorney General statute (codified at Cal. Code of Civ. Proc. Section 1021.5).  *See Graham v Daimlerchrysler Corp.* (2005) 34 Cal.4th 553.  In *Graham*, the California Supreme Court affirmed the "catalyst theory" which is a principle that permits California courts to look at the practical impact of the public interest litigation in order to determine whether the party was successful, and therefore potentially eligible for attorney fees.  It is not necessary that the action result in a final judgment; rather, the court will look to the "impact of the action, not its manner of resolution."

Exergen improperly claims that Plaintiffs are not entitled to their attorneys' fees because it did not change its behavior because of this lawsuit.  Exergen incorrectly relies on *Suter v. City of Lafayette*, 57 Cal. App. 4th 1109, 1137 (1997), to suggest that because it changed its behavior before this lawsuit, Plaintiffs are not entitled to any attorneys' fees.  In *Suter*, the court found that

the plaintiff was not entitled to any fees because neither the lawsuit nor the threat of the lawsuit acted as a catalyst in the defendant's decision to correct its behavior.  That is not the case here. Exergen changed its behavior only <u>after</u> Plaintiff Hall sent his notice of violation letter on December 8, 2014.  It did not spontaneously decide to change its behavior one random day. Notably, on January 7, 2015, counsel for Exergen stated, "Exergen Corporation ("Exergen") has asked us to respond to your December 8, 2014 letter concerning the "Made in USA" label . . . [w]hile Exergen denies any wrongdoing whatsoever, please be advised that Exergen intends to correct, repair, replace, or otherwise rectify the Product within a reasonable amount of time." And then on April 15, 2015, counsel for Exergen followed up with a correspondence confirming what actions Exergen was taking that it initially identified in its January 7, 2015 letter.  If Exergen did not believe it was doing anything wrong, why would it randomly change its behavior?  The only logical answer is that it did so in response to Plaintiff Hall's pre-litigation demand.

Additionally, Exergen mistakenly claims that Plaintiffs are not entitled to their fees because Plaintiffs cannot establish this lawsuit was necessary.  Exergen cites to *Envtl. Prot. Info. Ctr. v. Dep't of Foresty and Fire Prot.*, 190 Cal. App. 4th 217, 237 (2010) where the court held that fees may be awarded where the action is necessary.  Exergen argues that this action was not necessary because it made Plaintiffs and the putative class whole before this suit was filed. However, that is not the case here.  Exergen's efforts to date, while appreciated as a good first-step, are insufficient to recompense Plaintiffs and the putative class in full, and do nothing to resolve <u>all</u> of Plaintiffs' and the putative class' claims.  Therefore, this lawsuit is necessary and Plaintiffs and the putative class are entitled to recover their attorneys' fees and costs at the conclusion of this lawsuit.

## B. EXERGEN'S ACTIONS WERE INSUFFICIENT TO FULLY CORRECT THE OFFENDING BEHAVIOR.

As stated above, Plaintiffs' claims are *not* resolved in their entirety.  Plaintiffs are entitled

to Court evaluation, approval, monitoring, and enforcement of any current and future corrective steps. Further, Plaintiffs have a right to input on these corrective steps to ensure their adequacy. Exergen cannot simply unilaterally decide that its actions are enough. There must be some evaluation and determination by Plaintiffs and the putative class, as well as from this Court.

### 1. EXERGEN'S ATTEMPT TO CHANGE THEIR OFFENDING LABEL IS NOT COMPLETE.

Exergen has stated, through its counsel, that it changed its labeling on the product packaging and elsewhere. Although Plaintiffs applaud Exergen's *initial* efforts, concerns still remain. First, Exergen has not changed all of its labels. For example, as of the time of the drafting of this opposition, Exergen's website still shows pictures of product packaging with the unlawful "Made in the USA" representation. Additionally, there are a number of links to products and user manuals that still bear the "Made in the USA" label. (Donboli Decl, ¶ 4.) Second, there is no verification, monitoring and enforcement that the labels are all changed to the revised labels. Third, there is no guarantee that the labels remain in compliance. Exergen could decide at any time to return to its original, unlawful "Made in the USA" or similar mislabeling practices. Plaintiffs certainly appreciate that Exergen has begun the process to change its labels, however, there is still much to be done to protect consumers on a going forward basis. Exergen does not have the power to unilaterally decide that what it has done is sufficient without any declaration from this Court.

### 2. EXERGEN'S ATTEMPT TO IDENTIFY ITS CUSTOMERS MAY BE LACKING.

Exergen has stated that it identified 79,546 purchasers of the temporal scanner, however, it has not provided any further information regarding the process it took or any other data relating to the sales of the offending product. (Dkt. No. 9-1 at ¶ 7.) Plaintiffs and this Court need additional information in order to assess if Exergen's actions were sufficient. For example, Plaintiffs do not know the steps taken to identify the customers, the channels researched, etc.

Were all of these channels exhausted?  Can more consumers be reached through the retailers?  Through online purchase records?  Further, Plaintiffs need to know some data regarding the total number of units sold for certain years.  What percentage of customers were identified in relation to the total number of units sold over a particular time period?  At first glance, 79,546 end-users seems like an impressive number.  However, would the Court be interested to know whether Exergen sold 79,546 temporal scanner products during the Class Period (i.e., representing 100% of potential Class Members) or whether it sold 7,954,600 products during the Class Period (i.e., representing only 1% of potential Class Members).  Defendant's Motion and supporting documents are silent in this regard.  Neither this Court nor Plaintiffs and the putative class can determine if Exergen's efforts to identify its customers were acceptable until more information is obtain and analyzed.

### 3.   EXERGEN'S NOTICE IS INADEQUATE.

Exergen attempted to provide notice to *some* of its consumers.  Exergen's half-measures notice is inadequate.  First, a consumer must scroll all the way to the very bottom of Exergen's website where they will find a small box that reads "For information about the refund program, please click here."  It is not clear what the "refund program" is until one clicks on the link and reads the "notice".  A consumer would need to know what they are looking for, because it certainly is not obvious.  This alone is insufficient.  Additionally, Exergen may need to publish the "notice" elsewhere, not just on its website.  The notice may need to be distributed through its retailers, mailed, posted at retailer establishments, published in advertisements or parenting/child-related magazine, or all of the above.  Finally, the form and content of the notice is improper.  For example, the strong one-sided wording does not fully educate a consumer about his or her rights and fails to explain in a neutral way how he or she may be compensated.  For example, the "notice" states, "If you bought your Exergen Temporal Scanner under the belief that every

component in it was manufactured in the USA and want to return it to Exergen, we will be pleased to refund your purchase price."  Apparently, Exergen has unilaterally decided, incorrectly, that each consumer must have believed that <u>every component</u> in the scanner was made in the USA to be eligible for the "refund program".  This statement in the notice places an undue burden on the consumer—that he or she must have believed that that every component was made in the USA, or the consumer cannot receive a refund.  This is not the standard and Plaintiffs would never have agreed to its inclusion in the "notice".  These are all issues in which the Court and Plaintiffs are entitled to have input.  Again, Exergen cannot simply unilaterally decide that what it has chosen to do is adequate.

### 4. EXERGEN'S "CLAIMS PROCESS" IS DEFICIENT.

The claims process that Exergen designed is deficient.  The requirement that Exergen is placing on the consumer almost guarantees that only a handful of claimants will make a claim. Exergen is requiring that the consumer send the product back, with the receipt, a copy of the credit card statement, or the original packaging materials that show the purchase price, and they will receive a full refund for the purchase price plus any shipping costs.  Otherwise, the consumer will only receive the average price for the product at a particular retailer.  Again, these are issues in which the Court and Plaintiffs are entitled to have input and Exergen cannot simply unilaterally decide that what it has chosen to do is sufficient.

### C. EXERGEN'S RELIANCE ON THE CASES CITED IN ITS MOTION IS MISPLACED.

First, Exergen cites a number of cases that stand for the proposition that if a Plaintiff has no standing, it cannot assert claims in an action.  Plaintiffs agree with the general proposition regarding standing; however, as discussed in detail above, that is not the case here because Plaintiffs undoubtedly have standing.  They have standing because the causes of action set forth in the Complaint are *not* extinguished by Exergen's attempts to date to amend its behavior.

Second, Exergen mistakenly relies on a few cases in an attempt to demonstrate that Plaintiffs have no standing.  Those cases do *not* apply and can easily be distinguished.  For instance, Exergen cites to *Epstein v. Chase Bank, USA.*, Case No. 13 Civ. 4744 (KPF), 2014 U.S. Dist LEXIS 38628 (S.D.N.Y. Mar. 21, 2014) and *Frascogna v. Security Check, LLC*, No. 3:07cv686 DPJ-JCS, 2009 U.S. Dist. LEXI 4044.  In both of these cases, the plaintiff was made whole by the defendant, so the court determined there was no standing to proceed with any litigation.  Essentially, in *Epstein*, the plaintiff made an overpayment on his credit account and the defendant charged him an interest charge that extinguished the credit on plaintiff's account. Plaintiff demanded that the defendant pay him the overpayment (the credit), which the defendant did in the form of a check.  The plaintiff never cashed the check and filed suit.  The court found that the defendant fully remedied the wrong and made the plaintiff completely whole.  The court dismissed his claim for lack of standing.  Similarly, in *Frascogna*, the defendant made the plaintiff whole by giving plaintiff a Rule 68 offer.  The court concluded that the offer of judgment constituted all the relief plaintiff could hope to recover for defendant's alleged violations.

Neither the *Epstein* nor *Frascogna* cases are applicable to a class action case such as this one.  In this case, Exergen's actions, even if adequate, still do not make the Plaintiffs and Class Members whole.  Plaintiffs are entitled to much more relief than Exergen's actions to date, including injunctive relief to prevent future harm to consumers.

With respect to the *Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal. 3d 582 (1984) and *Chang v. Wozo LLC*, No. 11-10245-DJC, 2012 U.S. Dist. LEXIS 42896 (D. Mass. Mar. 28, 2012) cases, Exergen alleges they do not apply because it has made every effort to make the entire class whole.  Again, as discussed above, because Plaintiffs, or this Court for that matter, do not know the methods used to attempt to identify all of the purchasers of the scanner, or even the percentage of customers it did identify, it cannot be determined if Exergen did, in fact, make

every effort to make the class whole.  However, the law provides Plaintiffs and the putative class more assurance than Exergen's self-serving claims.

### D.   PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF EXPRESS WARRANTY.

Exergen also argues that Plaintiffs have failed to state a claim for breach of express warranty.  Apparently, Exergen's argument is that:  (a) Plaintiffs were required to give pre-lawsuit notice of the breaches of express warranty, and (b) that, as corollary to that requirement, Exergen's response to Plaintiffs' notifications invalidated Plaintiffs' claims.

As an initial matter, Exergen's claim that Plaintiffs were required to give notice is incorrect.  It is true that Cal. Commercial Code § 2607(3)(A) states that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *See Fieldstone Co. v. Briggs Plumbing Products, Inc.,* 54 Cal.App.4th 357, 369–70, 62 Cal.Rptr.2d 701 (1997). "However, timely notice of a breach of an express warranty is not required where the action is against a manufacturer and is brought by injured consumers against manufacturers with whom they have not dealt." Sanders v. Apple Inc., 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009).  Here, Plaintiffs specifically allege they purchased Exergen's products not through Exergen, but through an intermediary. See Compl. at ¶¶ 4-5.

In any event, Exergen's argument for dismissal of Plaintiffs' express warranty claims under Rule 12(b)(6) is in actuality no more than a rehashing of its argument for dismissal under Rule 12(b)(1): Exergen argues that, by "correct[ing] the purported problem on a nationwide basis," it mooted the claim. Def.'s Mem. at 19. But again, Plaintiffs dispute that Exergen *has* corrected the problem on a nationwide basis.  Exergen has also failed to render potential claims for punitive damages moot based on Exergen's flagrant violation of the law.

### E.   PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF IMPLIED WARRANTY.

Exergen next argues that Plaintiffs have failed to adequately allege a breach of the implied

warranty of merchantability, because "Plaintiffs do not allege that Exergen's Temporal Scanners were not fit for ordinary use." Def.'s Mem. at 19.  This argument misses the mark.  Under both Massachusetts and California law, a seller gives various implied warranties of merchantability. *See* Cal. Civ. Code § 1791.1(a) (listing the four promises that make up the "implied warranty that goods are merchantable" under California law); M.G.L.A. ch. 106, § 2-314(2) (listing the six promises that make up the implied promise that goods are merchantable under Massachusetts law).  And under both states' laws, one such implied promise is that goods "conform to the promises or affirmations of fact made on the container or label if any." M.G.L.A. ch. 106, § 2-314(2)(f); *see also* Cal. Civ. Code § 1791.1(a) (providing that all goods impliedly promise that they "[c]onform to the promises or affirmations of fact made on the container or label").  Here, Plaintiffs have alleged that the temporal scanner did not conform to the promises on its label. Compl. at ¶ 79. Thus, irrespective of whether the temporal scanner is fit for ordinary use, Plaintiffs have adequately alleged a claim for breach of implied warranty. *See, e.g.*, *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011) ("Although Ferrero argues that Nutella® is fit for its ordinary purpose of consumption, Plaintiffs are bringing their claim under a different definition of merchantability, whether the product conforms with 'the promises or affirmations of fact made on the container or label.' Cal. Com.Code § 2314(2)(f).  Accordingly, the Court declines to dismiss Plaintiffs' claim for breach of the implied warranty of merchantability."); *Allen v. Similasan Corp.*, No. 12cv0376–BTM–WMC, 2013 WL 2120825, at *6 (S.D. Cal. May 2014) ("The Court holds that Plaintiffs have stated a cause of action for breach of the implied warranty of merchantability, as they have alleged that Defendants' products did not conform to the promises or affirmations of fact made on the container or label.")

## IV.   CONCLUSION

For the above-stated reasons, Plaintiffs, and the putative class, respectfully request that

this Court deny Exergen's motion to dismiss and instruct Exergen to file an answer accordingly.

Dated:  July 8, 2015                                Respectfully submitted,

                                                    DEL MAR LAW GROUP, LLP

                                                    By:  /s/John Donboli

                                                    John Donboli
                                                    DEL MAR LAW GROUP, LLP
                                                    12250 El Camino Real, Suite 120
                                                    San Diego, CA 92130
                                                    Telephone: (858) 793-6244
                                                    Facsimile: (858) 793-6005
                                                    jdonboli@delmarlawgroup.com

                                                    Erica C. Mirabella
                                                    MIRABELLA LAW, LLC
                                                    132 Boylston Street, 5th Floor
                                                    Boston, MA  02116
                                                    (617) 580-8270
                                                    (617) 583-1905 (fax)
                                                    erica@mirabellaLLC.com

                                                    *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and a copy was made available to all electronic filing participants.

<u>/s/ John H. Donboli</u>
John H. Donboli