# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| ) | |
| ) | |
| **JULIE PIRO and MICHAEL HALL** ) | |
| **individually and on behalf of all others** ) | |
| **similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 15-cv-11834-DJC** |
| ) | |
| ) | |
| **EXERGEN CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                      **March 29, 2016**

## I.      Introduction

This is a putative class action arising out of allegedly deceptive labeling and packaging of the Exergen Temporal Thermometer ("Thermometer"), a non-invasive thermometer sold by defendant Exergen Corporation ("Exergen"). D. 1. Plaintiffs and proposed class representatives, Julie Piro ("Plaintiff Piro") and Michael Hall ("Plaintiff Hall") (collectively, "Named Plaintiffs") seek damages, injunctive relief and attorney's fees. Id.

The Named Plaintiffs propose two classes: one encompassing all consumers in Massachusetts who bought the Thermometer beginning in May 12, 2011 through the date of notice ("Massachusetts Class") and another encompassing a parallel group of purchasers in California ("California Class") (collectively, "Putative Class Members"). Id. ¶ 24. On behalf of the California Class, the Named Plaintiffs assert that the labeling on the Thermometer violated Cal. Bus. & Prof. Code § 17200 *et seq.* (Count I), violated Cal. Bus. & Prof. Code § 17533.7

(Count II), and constituted a breach of the express warranty (Count III) and the implied warranty of merchantability (Count IV).  Id. ¶¶ 34-67.  On behalf of the Massachusetts class, the Named Plaintiffs assert breach of the express warranty (Count III) and breach of the implied warranty of merchantability (Count IV).  Id. ¶¶ 54-67.  Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), Exergen now moves to dismiss.  D. 8.  For all of the reasons stated below, the motion to dismiss is DENIED.

## II.     Standard of Review

### A.  Motion to Dismiss for Lack of Standing Pursuant to Fed. R. Civ. P. 12(b)(1)

Exergen moves pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss all of the Named Plaintiffs' claims for lack of standing.  D. 9 at 15.  Standing is a jurisdictional issue.  See P.R. Tel. Co. v. T-Mobile P.R. LLC, 678 F.3d 49, 57 (1st Cir. 2012) (explaining that "[t]he jurisdictional question of whether the standing requirements of Article III are satisfied may be raised at any time").  As such, challenges to standing are properly considered in accordance with the requirements of Rule 12(b)(1) motions.  See Kolancian v. Snowden, 532 F. Supp. 2d 260, 261 (D. Mass. 2008) (noting that the "[d]efendants' motion challenging [the plaintiff's] standing is, in effect, a challenge to the court's jurisdiction properly raised under Fed. R. Civ. P. 12(b)(1)").

A jurisdictional attack pursuant to Rule 12(b)(1) may raise either a facial or factual challenge.  See Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007).  While a party raising a facial challenge accepts the truth of the non-moving party's allegations and questions the sufficiency of those allegations, a party raising a factual challenge questions the accuracy of the non-moving party's jurisdictional facts.  See Valentin, 254 F.3d at 363.  By its own characterization, Exergen raises a factual challenge.  D. 9 at 15.

In resolving a factual challenge to subject matter jurisdiction, the court begins by assessing whether the facts that are determinative of jurisdiction also implicate elements of the plaintiff's cause of action.  See Torres-Negrón, 504 F.3d 151 at 162-63.  If the jurisdictional questions and the substantive claims are "so intertwined [that] the resolution of the jurisdictional question is dependent on factual issues going to the merits," the court grants the motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  Id. (internal citation and quotation marks omitted).  Where a plaintiff has presented adequate evidence to create a genuine issue of material jurisdictional fact, the motion to dismiss must be denied.  Id.  As the jurisdictional issue of standing here has at its core whether the Named Plaintiffs have suffered an injury that has been remedied, this inquiry overlaps with the merits of the claims.

In assessing a Rule (12)(b)(1) motion, the court is permitted to consider materials outside of the pleadings, such as affidavits.  See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).  Indeed, "when a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached."  Valentin, 254 F.3d at 364.

### B. Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

As to the Named Plaintiffs' warranty claims, Exergen also moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the

complaint to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled to credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678). A complaint that consists exclusively of "'naked assertion[s]' devoid of 'further factual enhancement'" is subject to dismissal. Iqbal, 556 U.S. at 678 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

## III.    Factual Background

Exergen is a Massachusetts corporation with its principal place of business in Watertown, Massachusetts. D. 1 ¶ 6. Exergen sells its products throughout the United States. Id. Plaintiff Piro is a resident of Tewksbury, Massachusetts, who purchased the Thermometer in Peabody, Massachusetts between in or about July and September 2013. Id. ¶ 4. Plaintiff Hall is a resident of San Diego, California and purchased the Thermometer in Vista, California in or about November 2014. Id. ¶ 5.

Exergen manufactured, marketed and distributed the Thermometer. Id. ¶ 14. The packaging of the Thermometer and the body of the Thermometer contained labels asserting that the Thermometer was "MADE IN USA."[1] Id. ¶¶ 1, 14. Additionally, Exergen marketed and represented to the general public that the Thermometer was "MADE IN USA." Id. ¶ 16.

---

[1]  The complaint describes the disputed label as "MADE IN USA" and "MADE IN U.S.A." Compare D. 1 ¶ 1 with D. 1 ¶ 15.

According to the Named Plaintiffs, Exergen concealed the true origin of certain parts of the Thermometer.  Id.  The Named Plaintiffs allege that component parts of the Thermometer are manufactured outside of the United States.  Id. ¶ 15.  The foreign-made component parts in the Thermometers purchased by the Named Plaintiffs and the Putative Class Members allegedly include the LED lights, the LED display, the Microchip processor and/or the 9-volt battery.  Id. The Named Plaintiffs allege that the deceptive labeling was and continues to be material to consumers' decision to purchase the Thermometer.  Id. ¶¶ 2, 17, 19.  The Named Plaintiffs allege that they relied upon the deceptive labeling in choosing to purchase the Thermometer.  Id. ¶ 19. Exergen charged a premium price for the Thermometer based upon the deceptive labeling; the Named Plaintiffs and the Putative Class Members paid the premium price due to the same.  Id. ¶ 20.   The Named Plaintiffs allege that the class was fraudulently induced into purchasing Exergen's "products."  Id. ¶ 18.  According to the Named Plaintiffs, consumers elect to purchase products manufactured in the United States because "they believe they are supporting American companies and American jobs" and "that 'MADE IN USA' products are of higher quality than their foreign-manufactured counterparts."  Id. ¶ 17.

On December 8, 2014, counsel for the Named Plaintiffs sent Exergen a written demand for relief, identifying Plaintiff Hall and the California Class and describing the "unlawful acts committed and the injury suffered."  Id. ¶ 22.  On May 12, 2015, counsel for the Named Plaintiffs sent Exergen a written demand for relief, identifying Plaintiff Piro and the Massachusetts Class and describing the "unfair and deceptive acts or practices . . . and the injury."  Id. ¶ 23.

IV.     **Procedural History**

The Named Plaintiffs filed this lawsuit on May 12, 2015.  D. 1.  Exergen has now moved for dismissal.  D. 8.  The Court heard the parties on the motion and took the matter under advisement.  D. 20.

V.      **Discussion**

A.  **Exergen's Challenge to the Named Plaintiffs and Putative Class Members' Standing**

The Court begins with Exergen's Rule (12)(b)(1) motion.  See Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000).  In its Rule 12(b)(1) motion, Exergen argues that all of the claims should be dismissed because the Named Plaintiffs and Putative Class Members lack constitutional standing.  D. 9 at 15-20.  Pursuant to Article III of the United States constitution, federal court authority is limited to resolving "justiciable cases or controversies." Becker v. Fed. Election Comm'n, 230 F.3d 381, 384 (1st Cir. 2000).  This rule ensures that federal courts focus on "actual and concrete disputes, the resolutions of which have direct consequences on the parties involved."  Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528 (2013).  To establish standing, a plaintiff must show that she has "a sufficiently personal stake in the issue."  Becker, 230 F.3d at 385.  A plaintiff must show that (1) she suffered or is in danger of suffering a concrete and particularized injury (2) the injury is fairly traceable to the defendant's alleged misconduct and (3) a favorable court decision will likely redress the alleged injury.  See id.

These standing requirements apply to plaintiffs in a class action suit.  See, e.g., In re Boston Sci. Corp. ERISA Litig., 254 F.R.D. 24, 29 & n. 42 (D. Mass. 2008) (citing Lewis v. Casey, 518 U.S. 343, 357 (1996)).  If the named plaintiffs in a class action have not suffered a concrete and particularized injury that is traceable to the defendant and which can be addressed

6

by a court decision, they cannot seek relief on behalf of the class.  Id. at 30 & n. 43 (citing

O'Shea v. Littleton, 414 U.S. 488, 494 (1974)).

### 1.  Jurisdictional Facts

On December 8, 2014, counsel for Plaintiff Hall sent a letter to Exergen asserting that the

Thermometer labeled "MADE IN USA" contained foreign-made components.  D. 9-3 at 2; D. 12

at 26.   The letter demanded that Exergen correct, repair, replace, or otherwise rectify the

labeling, pay Plaintiff Hall's legal fees, consent to a permanent injunction preventing any further

use of such labeling, identify and notify consumers of the allegedly deceptive labeling and offer

an appropriate remedy to consumers.  D. 9-3 at 4-5; D. 12 at 6.

On January 7, 2015, Exergen responded to Plaintiff Hall's letter.  D. 9-4; D. 12 at 6.  In

the letter, Exergen denied any wrongdoing but stated that Exergen intended to correct, repair,

replace or otherwise rectify the Thermometer in a reasonable period of time.  D. 9-4 at 2; D. 12

at 6.  Exergen informed Plaintiff Hall that if he returned the product, Exergen would issue a full

refund.  D. 9-4 at 2; D. 12 at 6.  Exergen stated that it was going to make a reasonable effort to

identify purchasers of the Thermometer and notify them of Exergen's willingness to make

appropriate corrections.  D. 9-4 at 2; D. 12 at 6.  The letter explained that Exergen was in the

process of ceasing use of the "MADE IN USA" label and would engage in reasonable efforts to

replace existing labels with a revised label that complied with Cal. Civ. Code § 17533.7.  D. 9-4

at 2; D. 12 at 6.

On April 15, 2015, Exergen again wrote to Plaintiff Hall.  D. 9-5; D. 12 at 7.  Exergen

represented that it had ceased using the misleading label and replaced it with a new label that, by

Exergen's estimation, comported with Cal. Bus. & Prof. Code § 17533.7.  D. 9-5 at 2; D. 12 at 7.

Exergen also stated that it had identified "over 79,000" purchasers of the Thermometer and had

initiated a plan to offer refunds to those purchasers.   D. 9-5 at 3; D. 12 at 7.   In the letter, Exergen included a sample image of its customer notification letter which contains the heading "OFFER OF REFUND:  Your rights may be affected.  Please read this notice carefully."  D. 9-5 at 3.   Exergen asserted that nothing remained to be done and there was no basis for paying damages or attorney's fees.  D. 9-5 at 4; D. 12 at 7.   On May 1, 2015, counsel for Plaintiff Hall wrote Exergen to confirm that Exergen refused to enter into a stipulated injunction, to pay any attorney's fees and to participate in mediation.  D. 9-7 at 2; D. 12 at 7.

On May 12, 2015, Plaintiff Piro's counsel sent a letter to Exergen demanding relief under Mass. Gen. L. c. 93A for Exergen's allegedly unfair and deceptive use of the "MADE IN USA" label on the Thermometer.  D. 9-8 at 2-3; D. 12 at 6.   The letter included demands for a $50 refund to Plaintiff Piro, establishment of a common fund to issue refunds to Massachusetts purchasers of the Thermometer, an agreement to cease the labeling practice and reasonable attorney's fees.  D. 9-8 at 3; D. 12 at 6.   On the same day, the Named Plaintiffs filed this lawsuit against Exergen.  D. 1.   On June 4, 2015, Exergen replied to the May 12 letter and stated that no injunctive relief was available because Exergen fixed the labeling issue prior to that letter and the filing of the class action.  D. 9-9 at 2-3; D. 12 at 8.   Exergen also noted that it had already offered full refunds to those purchasers of the Thermometer that it could identify and specifically extended its offer to Plaintiff Piro.  D. 9-9 at 3; D. 12 at 8.

Based upon these facts, Exergen argues that its offer to refund the Named Plaintiffs, offer to refund those Putative Class Members that Exergen deemed identifiable and efforts to correct the allegedly misleading label made the Named Plaintiffs and the Putative Class Members, whole.

### 2.   Exergen's Offer to Refund the Named Plaintiffs

Exergen's offer to refund the Named Plaintiffs did not disrupt the Named Plaintiffs' standing.   The Supreme Court recently considered in <u>Campbell-Ewald Co. v. Gomez</u> the question of whether an unaccepted offer "can moot a plaintiff's claim, thereby depriving federal courts of Article III jurisdiction."   <u>See</u> <u>Campbell-Ewald</u>, __ U.S. __, 136 S.Ct. 663, 669 (2016). The Supreme Court held that "an unaccepted settlement offer has no force."   <u>Id.</u> at 669.   There, after the filing of his class action complaint (but before certification of the class) asserting a TCPA violation for having sent an unsolicited text solicitation, the defendant offered to pay the named plaintiff his costs, excluding attorney's fees, a damages amount per text that would amount to treble damages and a stipulated injunction that denied liability and any basis for injunctive relief.   <u>Id.</u> at 667-68.   The named plaintiff did not accept the offer.   In this scenario, the Supreme Court concluded that "[l]ike other unaccepted contract offers, [the unaccepted offer] creates no lasting right or obligation.   With the offer off the table, and the defendant's continuing denial of liability, adversity between the parties persists."   <u>Id.</u>   That is, "[a]bsent . . . acceptance, [a defendant's] settlement offer remain[s] only a proposal" without any binding effect.   <u>Id.</u> at 670.   As in this case, <u>Campbell-Ewald</u> involved a named plaintiff asserting claims upon behalf of himself and a putative class.   Given this context, the Supreme Court further reasoned that "[b]ecause [the plaintiff's] individual claim was not made moot by the expired settlement offer, that claim would retain vitality during the time involved in determining whether the case could proceed on behalf of a class.   While a class lacks independent status until certified, . . .  a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted."   <u>Id.</u> at 672 (internal citation omitted).

The facts in this case are similar to those in <u>Campbell-Ewald</u>.  While denying liability, Exergen made a refund offer to the Named Plaintiffs.  D. 9-4 at 2; D. 9-9 at 3.  Exergen concedes that the Named Plaintiffs never accepted the offer, D. 9 at 18, and the Named Plaintiffs seek relief on behalf of a class.  Accordingly, Exergen's unaccepted offer to the Named Plaintiffs did not extinguish the Named Plaintiffs' standing.

### 3.   Exergen's Offer to Refund Those Putative Class Members that Exergen Deemed Identifiable

Exergen stresses that its offer to issue a refund was not limited to the Named Plaintiffs, but extended to "all identifiable putative class members."  D. 9 at 19.  According to Exergen, "[t]he fact that . . . certain putative class members have chosen not to request a refund . . . does not change the conclusion that they all lack standing."  <u>Id.</u> at 18.  This Court has found and the parties have pointed to no binding authority addressing whether an unaccepted offer to those putative class members that a defendant unilaterally deems identifiable can, as a matter of law, extinguish the putative class members' standing on a class-wide basis.  This Court, however, need not resolve this question.  Even assuming *arguendo* that an unaccepted offer of an adequate remedy to putative class members can extinguish class-wide standing, the Named Plaintiffs argue that Exergen's refund offer and Exergen's unilaterally imposed corrective measures did not extinguish standing because the offer here was inadequate and failed to address the injury in full.  The Court turns to that question.

### 4.   The Adequacy of Exergen's Offer and Unilaterally Designed Corrective Measures

It is undisputed that Exergen, without admitting any liability, has taken steps to correct the allegedly deceptive nature of the label on the Thermometer.  D. 9-5 at 2; D. 12 at 7.  Exergen contends that its corrective measures addressed the Named Plaintiffs and the Putative Class

Members' injury in full.   D. 16 at 5.   Where an intervening circumstance has erased the plaintiff's personal stake in the suit, the suit must be dismissed.   See Genesis Healthcare, 133 S. Ct. at 1528.   A lawsuit, however, is rendered moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."   Campbell-Ewald, 136 S. Ct. at 669 (quoting Knox v. Serv. Emps. Intern. Union, Local 1000, 132 S. Ct. 2277, 2287 (2012)).   "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."   Id. (internal citations and quotation marks omitted).

Thus, courts have the authority to review a defendant's offer to assess whether those measures addressed the plaintiff's injury in full, thereby mooting the case.   See, e.g., Bais Yaakov of Spring Valley v. ACT, Inc., 798 F.3d 46, 55 (1st Cir. 2015) (holding that the plaintiff's claim was not mooted after determining that the plaintiff had not "'received complete relief'"); cf. Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001) (concluding that there was no standing where the plaintiffs received "complete relief" prior to the issuance of any court ruling).   In re Mattel, Inc., 588 F. Supp. 2d 1111, 1116 (C.D. Cal. 2008) is particularly instructive.   In In Re Mattel, Inc., the plaintiffs, a multi-district class, alleged that the defendant sold defective and unsafe toys to the plaintiffs.   Id. at 1114.   The plaintiffs sought, *inter alia*, damages for the purchase price of the toys.   Id. at 1117.   Prior to the commencement of the lawsuit, a government agency had recalled the allegedly unsafe toys and the defendant had voluntarily provided replacement toys.   Id. at 1114.   Once the suit was filed, the defendant argued that the plaintiffs had not adequately pleaded injury as "some [p]laintiffs ha[d] not been injured because they received replacement toys in the voluntary recalls."   Id. at 1117.

In rejecting the defendant's argument, the court explained that the "unilateral offering of a remedy by a defendant does not change the fact that a plaintiff has been injured."   Id.   The

court determined that "the proposition that a defendant can defeat a plaintiff's claim on standing grounds through the unilateral offering of a remedy of the defendant's choosing" was unsupported.  Id.  Moreover, "the [c]ourt . . . [saw] little justification in denying additional remedies to the purchasers of the product at issue if they [could] prove that the voluntary remedy offered by the defendant was inadequate."  Id. at 1116.

Like the plaintiffs in In Re Mattel, Inc., the Named Plaintiffs here have plausibly pleaded that Exergen's measures did not make the class whole and so genuine issues of material jurisdictional fact remain.   Open questions as to the adequacy of Exergen's self-designed corrective measures preclude the Court from concluding, as a matter of law, that Exergen has addressed the Named Plaintiffs and the Putative Class Members' injury in full.  These questions include, but are not necessarily limited to, the sufficiency of the notice Exergen sent to certain purchasers of the Thermometer;  the sufficiency of the refunds Exergen offered to the purchasers of the Thermometer; the adequacy of the new, revised label that Exergen purports to be using; and the risk of ongoing and future harm.  The Court considers each of these issues in turn.

### a. There Remains an Open Question as to Whether the Notice Exergen Sent to the Putative Class Members Was Adequate

In its April 15, 2015 letter to Plaintiff Hall, Exergen stated that it would "make a reasonable effort to identify consumers who ha[d] purchased the [Thermometer]."  D. 9-5 at 2. According to Exergen, it has identified 79,546 purchasers of the Thermometer and extended refund offers to them.  D. 9-1 at 3-4, 6.  Exergen concedes that it directly contacted only those purchasers who had elected to participate in Exergen's rebate program.  D. 9-1 at 4.  Exergen represents that it is unable to identify retail purchasers of the Thermometer who did not participate in its rebate program.  Id.  Exergen also placed a notice of the refund program on its

website on April 13, 2015.  Id.  According to Exergen, only .4% of the consumers to whom it sent notice regarding the alleged mislabeling returned the product for a refund.  D. 9 at 12.

While the parties have not pointed to any case precisely on point, the general principles that govern notice to absent class members are instructive.  In noting that notice other than actual personal notice is permissible for notifying absent class members, courts have observed that it remains "a fundamental requirement of due process that interested parties be apprised of the pendency of actions in which they have an interest, and be afforded an opportunity to present their allegations."  Reppert v. Marvin Lumber & Cedar Co., Inc., 359 F.3d 53, 56-57 (1st Cir. 2004) (holding that notice was sufficient to alert absent class members of class action suit and settlement where individual notices were mailed out and the notice was published in thirty-three newspapers of general circulation).  Robust efforts to reach as many class members as practically possible is required.  See, e.g., Bussie v. Allmerica Fin. Corp., 50 F. Supp. 2d 59, 66-67 (D. Mass. 1999) (discussing court-approved notice plan that required, inter alia, notice to be published in multiple major newspapers and the appointment of a third-party administrator to coordinate mailing of court-approved notice of class action and proposed settlement).  It is typical for courts to require some outreach efforts aimed specifically at those absent class members whose identities and contact information the defendant does not directly possess.  See, e.g., Bezdek v. Vibram USA Inc., 79 F. Supp. 3d 324, 334, 336 (D. Mass. 2015), aff'd, 809 F.3d 78 (1st Cir. 2015) (concluding that notice of class settlement was sufficient where "[t]he plan provided for direct notice to individuals where practicable through e-mail and postal mail, as well as summary notice through publication in newspapers, magazines, and other media outlets; publication of banner advertisements on various informational and social media websites; and

maintenance of a settlement website and toll-free telephone number providing information to class members").

Applying these principles, there is at least a question as to whether Exergen made a sufficiently vigorous effort to identify as many individuals affected by the allegedly mislabeling label as practically possible.  Because Exergen's direct notice was sent only to those purchasers who participated in its rebate program, there are purchasers of the Thermometer who have not received direct notice.  D. 9-1 at 4.  Whether there were cost-effective avenues, such as news outlets or direct communication with the retailers who sold Exergen's product, that Exergen might have reasonably employed in an effort to reach those purchasers of the Thermometer who did not participate in Exergen's rebate program remains to be seen.

The Named Plaintiffs have reasonably challenged the sufficiency of the notice Exergen placed on its website.  The Named Plaintiffs argue that the notice posted on the Exergen website is not sufficiently visible, clear or detailed to constitute meaningful notice.  D. 12 at 13. According to the Named Plaintiffs, there is only a single mention on Exergen's website of the opportunity to receive a refund for the Thermometer.  Id.  The mention of the refund program appears at the bottom of the webpage.  Id.  Once at the bottom of the webpage, visitors to the website see only a link that reads "For more information about the refund program, please click here."  Id.  The Named Plaintiffs raise concerns regarding whether that text contains sufficient particularity to alert a purchaser of the Thermometer that the refund program relates to the Thermometer, particularly given that the notice does not mention the product to which the refund program relates.  Since Exergen's website is the only vehicle Exergen has used to reach any purchasers of the Thermometer who did not participate in the rebate program, the alleged inadequacies in the notice on the website carry some weight.  For all of these reasons, there

remain questions as to whether Exergen's efforts to notify the Putative Class Members were adequate to address all of the alleged injury on a class-wide basis.  See D. 16 at 5.

> **b.  There Remains an Open Question as to Whether the Refunds Exergen Offered Fully Compensated the Putative Class Members for Their Injuries**

In its notice, Exergen offered to refund those Putative Class Members Exergen deemed identifiable the "purchase price" of the Thermometer.  D. 9-1 at 4.  The notification instructed the recipients to send in the Thermometer along with proof of purchase to receive a full refund. Id.  Purchasers who no longer had the receipt or credit card statement reflecting the price they paid for the Thermometer would be refunded the average price of "what [Exergen] f[ound] was likely being charged at retail for the product at the time you purchased it."  Id. at 5.  Exergen does not reveal how it has been or will continue to calculate the average price.  Presumably, even among the already limited group of purchasers who received Exergen's notice, any purchasers who did not save their proof of purchase may have received a refund in an amount less than she paid for the Thermometer.

Thus, there also remains a question as to whether all of the Putative Class Members have been made whole.  To the extent that Exergen reimbursed the Putative Class Members less than their purchase price, Exergen's efforts fell short of providing those Putative Class Members full relief.  See, e.g., Chang v. Wozo LLC, No. 11-cv-10245-DJC, 2012 WL 1067643, *8 (D. Mass. Mar. 28, 2012) (denying the motion to dismiss for lack of standing where "[the defendant's] offer of $350 plus costs to [the plaintiff] . . . fell well short of the maximum relief [the plaintiff] might obtain should he and the purported classes he seeks to represent ultimately prevail at trial").  Here, if the Named Plaintiffs and the Putative Class Members were to prevail on their claims arising under Cal. Bus. & Prof. Code §§ 17200 and 17533.7, for example, the Plaintiffs

might be entitled to restitution and injunctive relief.  See Cal. Bus. & Prof. Code § 17202; Cal. Bus. & Prof. Code § 17203.  The restitution is designed to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair or deceptive act."  Colgan v. Leatherman Tool Grp., Inc., 38 Cal. Rptr. 3d 36, 60 (Cal. Ct. App. 2006) (quoting Cal. Bus. & Prof. Code §§ 17203, 17535) (internal quotation marks omitted). Given that the claims at issue may entitle the Plaintiffs to full recovery of their economic loss, the Named Plaintiffs have plausibly alleged that the refunds Exergen issued to certain Putative Class Members did not provide maximum relief and thus standing has not been disrupted.

Epstein v. JPMorgan Chase & Co., No. 13-cv-4744-KPF, 2014 WL 1133567, at *1 (S.D.N.Y. Mar. 21, 2014), upon which Exergen relies, does not compel a different conclusion. The claims in Epstein related to a bank's alleged breach of a credit card agreement by charging the plaintiff "interest" on his positive credit card account balance.  Id. at *4.  The court found that the plaintiff lacked standing, both in his individual capacity and as a class representative, because the defendant banks had already provided him a refund check for the full, exact and undisputed amount of the alleged charge ($0.67).  Id. at *7-9.  As the court explained, the defendants "provided [the plaintiff] with a cashier's check that reimburse[d] [the plaintiff] for all economic damage he incurred as a result of the alleged breach, a fact that [the plaintiff] does not dispute."  Id. at *7.  Thus, it was undisputed that the plaintiff recovered for "all economic damage."  Id.  In that circumstance, the court rejected the suggestion that the plaintiff could "create[]" standing by refusing to cash the refund check.  Id.

The circumstances presented here, however, are critically different:  because the amount the Epstein plaintiff had been overcharged was uncontested and the refund check was for that amount, there was no question as to whether his injury had been addressed in full.  Quantifying

the injury and remedy here is more complicated because third party intermediaries were involved in the sale of the Thermometer, the Thermometer was sold for different prices across the country, the "average price" refund that Exergen has offered to those Putative Class Members who no longer have proof of purchase involves computation that may be the subject of dispute and there is no single verifiable written record of the purchases here as there was of the relevant transactions in Epstein.  For all of these reasons, the Court cannot conclude as a matter of law that the refund Exergen offered fully addressed the alleged injury on a class-wide basis such that standing no longer exists.

### c. There Also Remains an Open Question as to Whether the Revised Label Fully Complies with the Applicable Consumer Protection Laws

Exergen asserts that it has replaced the allegedly deceptive label with a new label that complies specifically with Cal. Bus. & Prof. Code § 17533.7.  D. 9-5 at 2; D. 9 at 17.  Exergen's new label reads:  "Invented, designed, assembled, tested, and packaged in the USA by Exergen Corporation."  D. 9-5 at 2.  In its briefing, Exergen has not presented any showing or made any argument regarding all of the ways in which the new label satisfies the requirements of Cal. Bus. & Prof. Code § 17200 *et seq.* or Cal. Bus. & Prof. Code § 17533.7.  Pursuant to section 17533.7, it is unlawful to label merchandise with "Made in U.S.A." "Made in America" "U.S.A." or the equivalent "if the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States."[2]  Cal. Bus. & Prof.

---

[2]  Exergen and the Named Plaintiffs dispute whether a recent amendment to Cal. Bus. & Prof. Code § 17533.7 is applicable.  D. 18; D. 19.  The amendment at issue went into effect on January 1, 2016 and exempts from the reach of section 17533.7 products labeled "MADE IN USA" where (1) the parts from outside of the United States do not constitute more than 5% of the final wholesale value of the product or (2) the manufacturer makes a specified showing regarding the parts that are from outside of the United States and those parts do not constitute more than 10% of the final wholesale value of the product.  See 2015 Cal. Legis. Serv. Ch. 238 (S.B. 633); see

Code § 17533.7(a).  Section 17200 prohibits advertising that is "unfair, deceptive, untrue or misleading."  Cal. Bus. & Prof. Code § 17200.  This Court retains the authority to determine, based upon proper briefing from all parties, whether the new label is fully compliant with Cal. Bus. & Prof. Code § 17200 *et seq.* and Cal. Bus. & Prof. Code § 17533.7 and is consistent with the requirements of the express warranty and implied warranty of merchantability.

> ### d. Finally, There Remains an Open Question as to Whether the Allegedly Misleading Representation Has Been Removed From All of Exergen's Labels, Packaging Materials and Advertisements

The Named Plaintiffs allege that "there are a number of links to products and user manuals that still bear the 'Made in the USA' label."  D. 12 at 12; D. 12-1 at 3.  The Named Plaintiffs point to one example of a link on Exergen's website that continued to advertise the Thermometer as "Made in the U.S.A." as of the date the Named Plaintiffs' opposition to the motion to dismiss was filed.  D. 12-1 at 3.  Exergen concedes that the Named Plaintiffs uncovered a "Made in the U.S.A." label on Exergen's website, D. 16 at 7, even after Exergen had represented that "there [was] nothing remaining to be done" to correct the allegedly deceptive label.  D. 9 at 11.  Exergen, nonetheless, seeks to dismiss the significance of same, describing it as a "single link to a PDF buried deep on Exergen's website dated August 25, 2014" that was "simply overlooked."  D. 16 at 7 & n.5.  The discovery, nevertheless, reinforces the possibility that there are other instances of the allegedly deceptive label still in use.  Moreover, Exergen represented in its April 15, 2015 letter to Plaintiff Hall that "[s]ubstantially all [Thermometers] presently in inventory in retail stores and distribution centers now have the New

---

also Cal. Bus. & Prof. Code § 17533.7.  At this juncture, the Court does not need to resolve whether the January 1, 2016 amendment to Cal. Bus. & Prof. Code § 17533.7 is applicable to Exergen's allegedly wrongful conduct.  Under either version of section 17533.7, there remain factual questions as to whether Exergen's new label complies with section 17533.7.  With this context given, the Named Plaintiffs' motion to strike Exergen's notice of supplemental authority is denied as moot.  D. 19.

Label or no statement." D. 9-5 at 2-3. Exergen's use of the term "substantially" suggests that there remain at least some Thermometers available at retail stores that still have the allegedly deceptive version of the label, which lends credibility to the Named Plaintiffs' contention that the allegedly deceptive label has not been removed entirely from use and, therefore, there is a risk of ongoing or future injury.

The Named Plaintiffs demanded an injunction pre-litigation, D. 9-3 at 4-5; D. 12 at 6, and now claim injunctive remedies in the complaint. D. 1 ¶ 3. The Named Plaintiffs stress that they have received no enforceable assurance that Exergen will not continue use of the allegedly deceptive label in the future. D. 12 at 7. While Exergen asserted in its April 15, 2015 letter to Plaintiff Hall that "Exergen will not in the future use the Old Label," Exergen expressed no willingness to enter into an injunction and declared that "there is nothing remaining to be done that could be the subject of any action for an injunction." D. 9-5 at 2-4; D. 9-6 at 2. Contrary to Exergen's assertions, if, for example, the Named Plaintiffs are able to show that Exergen violated Cal. Bus. & Prof. Code § 17200 *et seq.* or Cal. Bus. & Prof. Code § 17533.7, the Named Plaintiffs may be entitled to injunctive relief. See Cal. Bus. & Prof. Code § 17203 (providing that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined"). Thus, the claims at issue may entitle the Named Plaintiffs, if they prevail, to an enforceable mechanism for ensuring that allegedly deceptive labeling does not persist. This possibility further supports the conclusion that the Plaintiffs have not received full relief.

In disputing the Named Plaintiffs' entitlement to an injunction, Exergen again relies upon Epstein. In Epstein, the court determined that there was no risk of future harm based upon the fact that "the record before the Court demonstrate[d] a negligible possibility of any future injury to [the plaintiff] and certainly nothing that would be cognizable for standing purposes." Epstein,

2014 WL 1133567 at *8.  The court noted that "[the plaintiff] opened his Credit Card Account in May 2009" and "in the ensuing five years, [the defendants] have only once applied an allegedly wrongful 'interest' charge to his account."  Id. (internal citations omitted).  On that record, the court determined that there was no risk of future harm.  Id.  Unlike in Epstein, the record here does not reduce the possibility of future harm to a "negligible" level; there is no multi-year, ongoing contractual relationship between the parties here from which to draw similar inferences about the likelihood of future harm.

In the end, even if Exergen has made well-intended and laudable efforts to correct the labeling of the Thermometer and even if those efforts were a meaningful step towards addressing the class's alleged injury, the Court cannot determine as a matter of law that the Named Plaintiffs and the Putative Class Members have been made whole.  Thus, Exergen has failed to meet its burden of establishing that the Plaintiffs lack standing as a matter of law.  Exergen's Fed. R. Civ. P. 12(b)(1) motion to dismiss is denied.[3]

## B.   Exergen's Challenge to the Warranty Claims

In its Rule 12(b)(6) motion, Exergen moves to dismiss the breach of implied warranty of merchantability and express warranty claims.

### 1.   The Claim for Breach of the Express Warranty

The Named Plaintiffs have stated a plausible claim for breach of the express warranty in Count III.  Under both California and Massachusetts law, express warranties can be created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods

---

[3]  In light of this ruling, there is no need to address attorney's fees at this juncture. Accordingly, the Court has not relied upon Benson v. Southern California Auto Sales, Inc., 192 Cal. Rptr. 3d 67 (Cal. Ct. App. 2015), a case brought to the Court's attention in Exergen's notice of supplemental authority. D. 18-1.  For this reason as well, the Named Plaintiffs' motion to strike Exergen's notice of supplemental authority, D. 19, is denied as moot.

and becomes part of the basis of the bargain."  Cal. Com. Code. § 2313(1)(a); Mass. Gen. L. c.

106 § 2-313(1)(a) (using identical language).

Under California law, a plaintiff asserting a breach of express warranty claim must show

that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the

goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached."

In re ConAgra Foods, Inc., 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (internal quotation marks

and citation omitted).  The Named Plaintiffs have alleged each of these elements.  As to the

requirement of an alleged affirmation or promise, the Named Plaintiffs have alleged that Exergen

"expressly warrants on the packaging of its Thermometer that it is 'MADE IN U.S.A.'"  D. 1 ¶

56.  The Named Plaintiffs also allege that the label partly formed the basis of the bargain, as they

"would not have purchased the Thermometer had they known it was not 'MADE IN U.S.A.'"

Id. ¶ 19.  Finally, the Named Plaintiffs allege that Exergen breached its express warranty, id. ¶

59, because "[i]n fact, the Thermometer purchased by Plaintiffs contained component parts made

in foreign jurisdictions."  Id. ¶ 57.  Thus, the Named Plaintiffs have sufficiently pleaded a claim

for breach of express warranty under California law.

Under Massachusetts law, "[f]or an affirmation or description to be actionable as an

express warranty, it must have become 'part of the basis of the bargain.'"  Softub, Inc. v.

Mundial, Inc., 53 F. Supp. 3d 235, 252 (D. Mass. 2014) (quoting Mass. Gen. L. c. 106 § 2-

313(1)).   Again, the Named Plaintiffs have alleged that Exergen represented that the

Thermometer was "MADE IN USA," D. 1 ¶ 56, that the Named Plaintiffs would not have

purchased the Thermometer if they had known the Thermometer was not "MADE IN U.S.A.,"

id. ¶ 19, and that the Thermometer contained parts produced in foreign jurisdictions.  Id. ¶ 57.

Therefore, the Named Plaintiffs have also stated a plausible claim for breach of express warranty under Massachusetts law.

Exergen argues that the breach of express warranty claim must be dismissed because the Named Plaintiffs failed to comply with the claim's notice requirements. D. 9 at 24-25. Exergen correctly charges that there is a notice requirement under both Massachusetts and California law. Under Massachusetts law, "a plaintiff must give reasonably prompt notice of his warranty claim to the potential defendant; if he fails to do so, and the defendant is thereby prejudiced, the warranty claim is barred even if it is brought within the statute of limitations." Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 448-49 (1st Cir. 1997). Under California law, "[t]he buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of any breach or be barred from any remedy." Cardinal Health 301, Inc. v. Tyco Elecs. Corp., 87 Cal. Rptr. 3d 5, 20 (Cal. Ct. App. 2008) (alteration in original) (quoting Cal. Com. Code § 2607(3)(A)).

The Named Plaintiffs have plausibly alleged that their demand letters to Exergen satisfied their notice obligations under California and Massachusetts law. D. 9-3; D. 9-8. On December 8, 2014, before this suit was filed, Plaintiff Hall sent Exergen a letter notifying Exergen that Plaintiff Hall believed the Thermometer he purchased was falsely labeled as "MADE IN USA." D. 9-3 at 2. On May 12, 2015, Plaintiff Piro sent Exergen a letter notifying Exergen that the Thermometer that she purchased was falsely labeled as "MADE IN USA." D. 9-8 at 2-3. Without disputing that these letters were sent and put Exergen on notice, Exergen argues that the Named Plaintiffs' allegation that they notified Exergen through the demand letters is ultimately insufficient because Exergen responded to those demands by undertaking voluntary corrective measures. D. 9 at 25. Exergen has pointed to no legal support for its argument that notice is

nullified by a defendant's response to such notice.   Whether Exergen attempted to correct its allegedly deceptive labeling has no bearing upon whether the Named Plaintiffs have plausibly alleged that they provided Exergen notice of the Named Plaintiffs' warranty claim.   For all of these reasons, the Named Plaintiffs have stated a plausible claim for breach of express warranty.

### 2.   The Claim for Breach of the Implied Warranty of Merchantability

The Named Plaintiffs have sufficiently pleaded a claim for breach of the implied warranty of merchantability claim.   As a general matter, merchantability under both Massachusetts and California law means that goods must possess fitness for ordinary use.   See Mocek v. Alfa Leisure, Inc., 114 Cal. App. 4th 402, 406 (2003); Lally v. Volkswagen Aktiengesellschaft, 45 Mass. App. Ct. 317, 337 (1998).   Both state statutes provide implied promises that comprise the implied warranty of merchantability, Cal. Civ. Code § 1791.1(a); Mass. Gen. c. 106, § 2-314(2), including but not limited to the promise that goods "conform to the promises or affirmations of fact made on the container or label."   Id.   The Named Plaintiffs allege that the Thermometer was labeled as "MADE IN U.S.A." yet the Thermometer did not conform to the label because the Thermometer contained foreign-made parts. D. 1 ¶ 65.   Thus, the Named Plaintiffs have sufficiently stated a claim for breach of the implied warranty of merchantability.

Exergen argues that the Court must dismiss Count IV because the Named Plaintiffs do not challenge the Thermometer's fitness for ordinary use. D. 9 at 25.   Exergen's argument fails to recognize that label nonconformity represents a distinct ways in which a defendant might breach the implied warranty of merchantability.   See, e.g., In re Ferrero Litig., 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011) (declining to dismiss an implied warranty of merchantability claim because "[a]lthough [the defendant] argues that Nutella® is fit for its ordinary purpose of

consumption, [the plaintiffs] are bringing their claim under a different definition of merchantability, whether the product conforms with 'the promises or affirmations of fact made on the container or label'") (quoting Cal. Com. Code § 2314(2)(f)); <u>Allen v. Similasan Corp.</u>, No. 12-cv-0376-BTM, 2013 WL 2120825, at *6 (S.D. Cal. May 14, 2013) (holding that "[the plaintiffs] have stated a cause of action for breach of the implied warranty of merchantability, as they have alleged that [the defendant's] products did not conform to the promises or affirmations of fact made on the container or label"); <u>United Cal. Bank v. E. Mountain Sports, Inc.</u>, 546 F. Supp. 945, 957 (D. Mass. 1982) (concluding that products labeled in a manner inconsistent with applicable FTC guidelines violated the implied warranty of merchantability).[4]

For all of these reasons, the Named Plaintiffs have stated a plausible claim for breach of the implied warranty of merchantability.

## VI.    Conclusion

For the foregoing reasons, the Court DENIES Exergen's motion to dismiss, D. 8, and DENIES the Named Plaintiffs' motion to strike.  D. 19.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[4]  Despite Exergen's suggestion otherwise, the court in <u>Rossi v. Whirlpool Corp.</u>, No. 2:12-cv-00125, 2013 WL 5781673, at *7 (E.D. Cal. Oct. 25, 2013) declared only that "even though a product may be labeled with specific adjectives, that description does not change the ordinary purpose that it is used for."  <u>Id.</u>  Indeed, the <u>Rossi</u> court acknowledged that among the elements of the implied warranty is the requirement that all goods must "[c]onform to the promises or affirmations of fact made on the container or label if any."  <u>Id.</u> at *6 (quoting Cal. Com. Code § 2314(2)).